UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**MARK AMOS BARKER**                                                                 **PLAINTIFF**
**ADC # 139988**

**VS.**                          **3:18-CV-00137-DPM-JTR**

**RONNIE COLEMAN, Jail Administrator,**
**Crittenden County Jail,** *et al*.                                                  **DEFENDANTS**

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

1

## I. Introduction

Plaintiff Mark Amos Barker ("Barker"), proceeding *pro se*, contends that while he was detained in the Crittenden County Detention Center ("CCDC"), his constitutional rights were violated when: (1) Defendants Ronnie Coleman ("Coleman") and Christopher Williams ("Williams") failed to protect him from an "attack" by a fellow prisoner on May 24, 2018; and (2) Defendant Mandy Childress ("Childress") provided inadequate medical care for injuries he allegedly sustained in the "attack."[1] *Docs. 52 & 54*. Barker seeks an award of compensatory and punitive damages.

Coleman, Williams, and Childress have filed a Motion for Summary Judgment, a Brief in Support, a Statement of Undisputed Facts, and a Reply.[2] *Docs. 57-59, 66*. Barker has filed a Response and a Reply. *Docs. 65 & 67*.

---

[1] Barker made other claims, but they were dismissed either at the screening stage or for failure to exhaust his administrative remedies. *See Docs. 11, 14 & 54 at 1-2* ("Barker's failure to protect claim and denial of medical care claim related to the May 24th alleged assault go forward. All other claims are dismissed without prejudice for failure to exhaust.").

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

## II.  Undisputed Facts[3]

Before reaching the merits of Defendants' Motion for Summary Judgment, the Court will review the relevant undisputed facts giving rise to Barker's failure to protect and inadequate medical care claims.

1. On May 24, 2018, Barker was involved in a fight with fellow prisoners. The incident occurred in the CCDC's main pod and was captured on video. Video, *Doc. 34* (sealed).

2. The video shows that, at approximately 10:37:55 a.m., Barker, without provocation, approaches Mario Wilson ("Wilson"), another inmate, and hits him in the face one time with his fist. After striking Wilson, Barker then backs away and begins posturing as if he wants to continue his fight with Wilson. As he does so, Barker is holding a white sock that appears to have an object in it.[4] Video, *Doc. 34*.

---

[3] These undisputed facts come from Defendants' Statement of Undisputed Facts, Barker's Response to that Statement, and the video of the entire incident, which the Court has reviewed numerous times. Statement, *Doc. 58*; Response, *Doc. 65*; Video, *Doc. 34*.

At the summary judgment stage, the Court considers only admissible evidence in determining whether a fact is disputed. *See Howard v. Columbia Public School District*, 363 F.3d 797, 801 (8th Cir. 2004) (in reviewing a summary judgment motion, the court must "consider only admissible evidence and [must] disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact").

[4] Wilson does not deny being the initial aggressor or wielding a sock. Instead, he only "denies that there was any dominoes in that sock." *Doc. 58 at p. 8*. Whether the sock contained dominoes, some other object, or nothing at all (which is inconsistent with the video), is not material to the resolution of this case.

According to the ADC website, Barker is 5'9" and 241 lbs, while Wilson is 5'8" and 135 lbs.[5]

3.  At approximately 10:38:40, Barker, using the sock as a weapon, hits Wilson in the face a second time before backing away again. At approximately 10:38:50 a.m., a different inmate, who is standing around with other inmates looking on, approaches Barker in an angry manner holding a food tray. Two different inmates attempt to stop the altercation between Barker and the inmate with the food tray. One of these inmates reaches down and takes the sock from Barker's hand. Video, *Doc. 34*.

4.  At approximately 10:39:07, Barker, pursued by the other inmate who approached him with the food tray, moves out of the range of the video camera. At 10:39:11, a non-party correctional officer, standing in a group of other inmates, can be seen on his radio, apparently calling for assistance.

5.  At 10:39:39, Barker appears in the video again. Barker's shirt is torn, and he is holding a food tray in his hand. Another inmate then rushes at Barker and throws a food tray at him. At 10:39:50, Barker steps into a metal "cage" and closes the door. He attempts to open it a few seconds later, but a non-party correctional officer pushes Barker inside, ending the incident. Video, *Doc. 34*.

---

[5] *See* https://apps.ark.org/inmate_info/index.php (last accessed September 10, 2020). Barker and Wilson's video images are consistent with this size disparity.

6. The entire incident lasted less than three minutes. Video, *Doc. 34*. Nothing in the video or any other evidence before the Court suggests that Barker suffered any serious injuries in the altercation.

7. Later that day, Barker submitted an Inmate Communication Form grieving that he "got into an altercation on 5/24/18 where [he] used good faith judgment of self-defense." Barker identified the five inmates who "jumped" him and requested a "full investigation." Barker directed this request to "Internal Affairs." This grievance does *not* contain a request for medical treatment. *Doc. 58-1*, Exh. A-2, Request/Grievances at 13.

8. At some point on May 24, 2018, Barker also submitted a Misdemeanor Affidavit to the Crittenden County District Court alleging that Wilson stole $58 worth of Barker's commissary. Barker requested a warrant for Wilson's arrest. *Doc. 65 at 24*.

9. On May 29, 2018, Barker submitted an Inmate Communication Form, stating:

> I wrote the nurse a request on 5-24-18 from the incident of me getting jumped on, hitted in the head with trays . . . I keep blacking out due to head trauma and having blurred vision. I feel that am in desperate need of a catscan.

*Doc. 58-1*, Exh. A-2, Request/Grievances at 14.

10. Coleman interpreted Barker's May 29th submission as a medical request, determined it was not an emergency, and directed medical staff to see Barker during the next sick call. Coleman Aff. at ¶ 13, *Doc. 58-1*.

11. On May 31, 201, seven days after the incident, a non-party nurse treated Barker during sick call. She determined that no additional medical care was necessary.[6] *Doc. 58-1*, Exh. A-2, Request/Grievances at 14.

12. On May 30, 2018, Barker submitted an Inmate Communication Form requesting that his grievances be reviewed. *Doc. 58-1*, Exh. A-2, Request/Grievances at 15.

13. On May 30, 2018, Barker also submitted a "Statement Form" to the Crittenden County Sheriff's Department's Internal Investigation Division, stating:

> On 5-27-18 [May 24, 2018][7] I had $58 of commissary in my cell took out by Mario Wilson which the camera was reviewed and showed Mario Wilson was the inmate that went in my cell and took my commissary. The camera clearly states inmate Mario Wilson coming outta my cell with it Red handed I am pressing charges according would you please reinstate my commissary Thank you.

*Doc. 58-1*, Exh. A-4, Incident Reports at 27.

---

[6] While her notes are difficult to decipher, she concludes that Barker is in no distress. Barker does *not* argue that he required additional medical treatment, rather, he complains that it took seven days from the incident to be seen by a nurse. *See Doc. 65 at 8*.

[7] Barker mistakenly referred to May 27 - not May 24 - as the date Wilson stole his commissary. *Doc. 65 at 9*.

14. On August 27, 2018, McArthur prepared an Internal Investigation Report, in which he concluded, among other things, that: (1) the video of the May 24 incident showed that Barker attacked Wilson "without provocation with an improvised impact weapon;" (2) "criminal charges were never filed" against Wilson "because of the video evidence;" and (3) Wilson "declined to pursue criminal charges." *Doc. 58-1*, Exh. A-4, Incident Reports at 34-35.

15. The May 24, 2018 altercation between Barker and Wilson was the first altercation between the two inmates. Coleman Affidavit, *Doc. 58-1 at ¶ 4*. Wilson was not on Berker's enemy-alert list and Defendants had no advance notice of any problems or disagreements between Barker and Wilson.

16. At no time prior to the altercation did Barker submit a written request to Coleman, Williams or any jail staff to place Wilson, or any other inmate, on his enemy list. Coleman Affidavit, *Doc. 58-1 at ¶ 5*.

17. Neither Coleman nor Williams were present when the altercation occurred. Coleman Affidavit, *Doc. 58-1 at ¶3,10*.

18. At the time of the altercation, neither Coleman nor Williams had any reason to believe or suspect that Barker's personal safety might be at risk for any reason. Coleman Affidavit, *Doc. 58-1 at ¶ 6;* Williams Affidavit, *Doc. 58-2 at ¶ 6*.

19. Childress was on vacation between May 25 and May 29, 2018. Because she was not physically present at the CCDC on those dates, she was unavailable to treat or provide any medical care to Barker. Childress Affidavit, *Doc. 58-4 at ¶ 2*.[8]

### III. Discussion

#### A. Failure to Protect Claim

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to "take reasonable measures to guarantee" inmate safety by protecting them from attacks by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, prison officials do not commit a constitutional violation every time one prisoner attacks another. *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007); *Blades v. Schuetzle*, 302 F.3d 801, 803-04 (8th Cir. 2002). Instead, to prevail on his failure to protect claim, Barker must prove that: (1) objectively, Coleman and Williams should have been aware that Wilson posed a substantial risk of serious harm to Barker; and (2) subjectively, Coleman and Williams were deliberately indifferent to that substantial risk of serious harm. *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011); *Young*, 508 F.3d at 872. An official is deliberately indifferent only if he or she "knows of and disregards an excessive risk to inmate

---

[8] Childress contends that her vacation started on May 24. However, Barker points out that it appears that she worked at least some on May 24 because her name appears on the schedule. Thus, viewing this disputed but immaterial fact in Barker's favor, the Court assumes that Childress worked on May 24.

8

health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

As a threshold matter, because Barker started the fight, he cannot prevail on his failure to protect claim. In effect, Barker is arguing that Coleman and Williams should have protected him from himself. While Barker argues he acted in self-defense, the video "conspicuously refutes and completely discredits" Barker's claim that he was a victim. *Wright v. United States*, 545 F. App'x 588, 590 (8th Cir. 2013) (citing *Wallingford v. Olson*, 592 F.3d 888, 892-893 (8th Cir. 2010)) (The district court need not accept the nonmovant's version of the facts when it is discredited by video evidence). Thus, based on the undisputed facts, neither Coleman nor Williams did or failed to do *anything* that created "a substantial risk of serious harm." *Young v. Selk*, 508 F.3d 868 (8th Cir. 2007).

Accordingly, the Court recommends that Barker's failure to protect claims against Coleman and Williams be dismissed, with prejudice.[9]

---

[9] Defendants have also raised the defense of qualified immunity. Because there is no evidence of a constitutional violation, there is no need for the Court to address qualified immunity as an alternative ground for dismissal. *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 574 (8th Cir. 2009) ("Since we find no constitutional violation, we need not address the issues of qualified immunity and municipal liability."); *Ambrose v. Young*, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007) ("[I]f the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed[.]'").

### B. Inadequate Medical Care Claim

To proceed to trial on his inadequate medical care claims against Childress, Barker must have evidence demonstrating that: (1) he had an objectively serious need for medical care to treat injuries he suffered in the May 24th fight; and (2) Childress subjectively knew of, but deliberately disregarded, that serious medical need by delaying his medical treatment. *See Saylor v. Nebraska,* 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). Deliberate indifference, which goes well beyond negligence or gross negligence, "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Additionally, because Barker's inadequate medical care claim is rooted in the contention that necessary medical treatment was *delayed*, he must provide evidence to demonstrate that he was harmed by the alleged delay in treatment. *Jackson v. Riebold*, 815 F.3d 1114, 1120-21 (8th Cir. 2016); *Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (explaining that, to avoid summary judgment on a delay in medical care claim, an inmate must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (same).

First, any deliberate indifference by Childress could only have occurred on May 24, 2018, because she did not work at all from May 25 through May 29, 2020. Although Barker claims that he completed a "medical request" on May 24, the Inmate Communication Form he completed on that date is not marked "medical request" and cannot be fairly ready as requesting treatment for any identified injuries. *Doc. 65 at 19*. Finally, when Barker submitted a request for medical care on May 29, he was treated two days later by a non-party nurse who concluded Barker had no need for further medical care.

Barker has failed to provide *any evidence* from which a jury could find that: (1) Barker suffered injuries in the May 24 altercation giving rise to an objectively serious need for medical care; (2) Childress had *no knowledge* that Barker had been injured on May 24, much less knowledge that he required any medical treatment on that date; (3) Childress played any role in the brief delay before Barker was evaluated by a non-party nurse and found *not* to require any medical treatment; or (4) the alleged brief delay in Barker seeing a nurse caused him any harm. Accordingly, the Court recommends that Barker's inadequate medical care claim against Childress be dismissed, with prejudice.

### IV. Conclusion

IT IS HEREBY RECOMMENDED THAT Defendants Childress, Coleman, and William's Motion for Summary Judgment *(Doc. 57)* be GRANTED, and all of

11

Barker's remaining claims be DISMISSED, with prejudice.

Dated this 25th day of September, 2020.

_____
UNITED STATES MAGISTRATE JUDGE